# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**                                    **SUFFOLK SUPERIOR COURT**
                                                    **CIVIL ACTION NO.:**

_____

GLYNN HOSPITALITY GROUP, INC.                )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )
                                             )                **2/4/2021**
RSUI INDEMNITY COMPANY                        )
                                             )
            Defendant.                       )
_____      )

## <u>COMPLAINT</u>

### Introduction

        This case presents issues concerning whether Plaintiff, Glynn Hospitality Group's

Commercial Property Insurance Policy (hereinafter "the Policy") provides coverage for damages

sustained and/or expenses incurred by the Plaintiff as a result of unprecedented emergency Orders

by state and local officials of the Commonwealth of Massachusetts restricting the Plaintiff's on-

premises business activities to mitigate the COVID-19 pandemic.  The emergency Orders were

intended to protect people and property from imminent, serious and irreparable injury, by

suspending on-premises business activities.  In the alternative, or in addition to the effects of the

emergency Orders, this case involves whether the Plaintiff's insurance policy provides coverage

for damages sustained and/or expenses incurred by the Plaintiff where the COVID-19 virus is

present on-site, causing damage to the Plaintiff's property and on-premises business activities.

Other theories of coverage are available to the Plaintiff under the terms of the Policy and are pled

in the alternative or cumulatively.  A paginated copy of the Policy (with a Table of Contents) is

attached hereto as Exhibit "A", prepared by the Plaintiff's counsel for the convenience of the Court.

The Plaintiff hereby sues the Defendant, RSUI Indemnity Company, (hereinafter "the Defendant"), and states:

## PARTIES

1.      The Plaintiff is a Massachusetts Corporation that operates prominent restaurants, bars, pubs, and entertainment venues in the County of Suffolk, Commonwealth of Massachusetts. The relevant properties are as follows:

    a.  171-173 Milk Street, Boston, MA 02110

    b.  160 State Street, Boston, MA 02109

    c.  164-166 Milk Street, Boston, MA 02109

    d.  333 Columbus Avenue, Boston, MA 02116

    e.  955 Boylston Street, Boston, MA 02115

    f.  111 Dartmouth Street, Boston, MA 02116

    g.  168-178 Milk Street, Boston, MA 02109

    h.  60 State Street, Boston, MA 02109

    i.  132-134 Canal Street, Boston, MA 02114

    j.  83 Central Street, Boston, MA 02109

2.      Defendant is a Georgia corporation with its principal place of business located at 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30326. It is authorized to conduct business in the Commonwealth of Massachusetts.

## FACTS

### I.     The Policy

3.      The Plaintiff purchased commercial business-owners insurance policy # NHD909990 (the Policy) from the insurer prior to September 29, 2019.  Ex. "A".  The policy period for the Policy is from September 29, 2019 through September 29, 2020.  The Policy insured the Plaintiff's restaurants, bars, pubs, and entertainment venues.  The Policy is incorporated herein and made a part of this Complaint.

4.      The Policy is an all-risk commercial property insurance policy that provides coverage for physical loss of or damage to the insured property and other losses from all risks unless expressly limited or excluded by language in the body of the Policy or through a separate exclusion endorsement.

5.      The Policy includes cause of loss coverages for business income losses and extra expenses from all risks including but not limited civil authority actions affecting the functionality of one's property.

6.      The Policy provides blanket coverage limits for business income losses and expenses at each of the Plaintiff's insured properties (hereinafter "Covered Properties") as follows:

   a.   171-173 Milk Street, Boston, MA 02110 - $541,555;

   b.   160 State Street, Boston, MA 02109 - $644,444;

   c.   164-166 Milk Street, Boston, MA 02109 - $524,444;

   d.   333 Columbus Avenue, Boston, MA 02116 - $733,333;

   e.   955 Boylston Street, Boston, MA 02115 - $673,888;

   f.   111 Dartmouth Street, Boston, MA 02116 - $407,222;

   g.   168-178 Milk Street, Boston, MA 02109 - $700,000;

h.  60 State Street, Boston, MA 02109 - $450,000;

i.  83 Central Street, Boston, MA 02109 - $140,000;

j.  132-134 Canal Street, Boston, MA 02114 - $160,000;

7.      There is no exclusion in the Policy for lost business income and expenses caused by either emergency orders limiting one's business or the pandemic causing property damage and restricting the Plaintiff's business activities at its properties, or both.

8.      The Policy sold by the Defendant to the Plaintiff, like all insurance policies, must be read as a whole.

9.      The Defendant has numerous duties under the Policy, including (but not limited to) answering insured questions regarding coverage, receiving loss notices, honestly investigating and assessing claims without a predetermined result, and issuing declination of coverage letters when appropriate, and promptly paying the claim when appropriate.

10.     All conditions precedent to this action have been performed or have been waived.

**II.      The COVID-19 Pandemic**

11.     The world is in the midst of a pandemic. SARS-CoV-2, the name given to the virus belonging to the *orthocoronavirinae* subfamily (COVID-19 virus), is the coronavirus responsible for the pandemic, and associated collections of diseases, which, based on today's knowledge and science, is transmitted through respiratory droplets, fomites or aerosols which remain suspended in the air for prolonged periods of time.

12.     The COVID-19 virus was ubiquitous in all parts of the Greater Boston Area where the Plaintiff's properties are located.

13.     Upon information and belief, at all relevant times, the COVID-19 virus was present on all of the Plaintiff's Covered Properties.

4

14.     From the first reported case in the United States in January 2020 to the present, the impact of the COVID-19 virus has been devastating. More than 15,000,00Americans have had a confirmed presence of the COVID-19 virus, and more than 285,000 have died from its resulting effects.  In Suffolk County, where Boston is located, more than 260,000 cases of the virus have been confirmed, and more than 11,000 have died from its resulting effects.

15.     The global COVID-19 pandemic is exacerbated by the fact that the coronavirus is a physical substance that directly lives on and is active on surfaces of objects or materials in a building for extended periods.  The COVID-19 virus is airborne, directly emitted and permeates the insured property and premises.  The virus is spread, in part, because of its aerosol transport in and throughout buildings and their airways.

16.     The COVID-19 virus is a cause of real physical loss of or damage to property. According to a study published in THE NEW ENGLAND JOURNAL OF MEDICINE, the virus adheres to its environment, remaining stable and transmittable in aerosols for at least three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.  These are common objects found in the Plaintiff's insured premises.  Other studies suggest a longer lifespan.[1]

17.     According to a study conducted by Tulane National Primate Research Center, the virus was able to survive in air for at least 16 hours.  Other studies suggest a longer survival rate for aerosols.

18.     Business establishments like the Plaintiff's Covered Properties (restaurants, bars, pubs, and entertainment venues) are highly susceptible to being or becoming affected by the presence of the virus, as both respiratory droplets and fomites are likely to be retained on the

---

[1] Scientific findings are dynamic and may continue to evolve prior to trial.

Covered Property or in its air, remaining viable for an extended period of time.

19.     The Plaintiff's businesses are also highly susceptible to being affected by the rapid transmission of the virus because of the nature of the property and its use as a highly social venue placing patrons and staff in close proximity to the property, to one another, and to the existing load of the COVID-19 virus's presence on surfaces or in the air.

20.     The material dimensions of a property can be altered and damaged through microscopic changes caused by the COVID-19 virus.  Such damage may produce deadly results to human beings.  If a person infected with the COVID-19 virus enters a building, then (until disinfected and decontaminated) the building is (1) physically altered by the direct physical presence of the virus on surfaces or in the air, and (2) thus physically damaged, and (3) may potentially be transformed into a superspreading viral incubator.

21.     One of the best ways to decontaminate a building or mitigate its level of contamination is to keep COVID-19 virus carriers out by depopulating it by or lowering the overall number of people allowed in at one time.

22.     Many COVID-19 viral carriers (people) can infect others even though these carriers are asymptomatic.  These carriers can transmit the virus directly or indirectly.  Since the virus travels in aerosols or remains active on surfaces after being emitted by the carriers when they speak, shout, or sing, viral aerosols often end up on surfaces, in the air, and air circulation equipment of buildings.

23.     The ongoing presence of large numbers of customers and employees, some of whom are virus carriers, in relatively confined indoor spaces, ultimately affects the building.  At all relevant times, this caused physical damage to the Plaintiff's Covered Properties.

### III.    State and Local Emergency Orders

24.    When it became apparent that publicity alone concerning COVID-19 would not naturally facilitate voluntary actions that would mitigate the pandemic, state and local authorities intervened through a series of emergency Orders.

25.    The pandemic affected the Commonwealth especially hard.  Commencing on March 13, 2020 and continuing to the present, Massachusetts Governor Charlie Baker issued a series of Executive Orders designed to prevent and limit the spread in the Commonwealth of the COVID 19 virus.  The Executive Orders were premised on the fact that the Commonwealth was dealing with a disaster.  The March 13, 2020 Order prohibited gatherings of more than two-hundred fifty people.

26.    On March 15, 2020, Governor Baker further Ordered restaurants to cease on-premises consumption of food or drink.  The Order further precluded gatherings of more than twenty-five people.

27.    Similarly, starting March 15, 2020, Marty Walsh, the Mayor of Boston, issued Executive Orders prohibiting the retail on-premises restaurant and bar services and retail operations of the Plaintiff's businesses in the City of Boston.

28.    On March 23, 2020, Governor Baker, with the support of the Department of Public Health, issued an Order requiring the mandated closure of businesses in the Commonwealth, effective March 24, 2020.  The Order provided as follows:  "All businesses and other organizations that do not provide COVID-19 Essential Services shall close their physical workplaces and facilities ("brick-and-mortar premises") to workers, customers, and the public as of 12:00 noon on March 24, 2020 and shall not re-open to workers, customers, or the public before 12:00 noon on April 7, 2020."  The Order further limited gatherings to no more than ten people, rescinding a

previous March 15, 2020 Order that limited on-premises consumption of food and gatherings to twenty-five people or less. Subsequent Orders continued to severely limited the Plaintiff's business operations up to and including the present.

29.     These Orders were intended to protect people and property from imminent substantial harm and avoid the occurrence in the Commonwealth of a pandemic disaster.

30.     For the most part, the emergency Orders (including those causing the Plaintiff's losses) were issued pursuant to the Executives' inherent emergency powers. They were not the result of the legislative or deliberative body's process typical of laws and regulations.

31.     The Plaintiff has complied with all Executive Orders issued by Governor Baker and Mayor Walsh.

32.     These unprecedented emergency Orders affecting the Plaintiff were not a foregone conclusion or obvious consequence of the COVID-19 pandemic, as evidenced by the great variance between states, localities, and foreign nations as to the types and extent of restrictions placed on businesses and public activities, if any.

33.     A national debate has evolved concerning the Orders' necessity, appropriateness, breadth and length, with some high-profile federal and state officials in some circumstances questioning the motivation behind them or their continuation. Public health authorities understood that the risk of harm to people and property was real, concrete and imminent as COVID-19 was exploding in the general population at an alarming rate.

34.     Whether a building has been contaminated prior to the emergency Orders or was at imminent risk of contamination can be demonstrated by circumstantial evidence.

35.     The COVID-19 virus was an external physical force detrimental to people and/or property, that caused damage to the Plaintiff's properties.

8

36.     The COVID-19 virus was present at each of the Plaintiff's Covered Properties at all relevant times, or there was an imminent risk of on-site viral presence at all relative times, or both.

37.     The goal of the emergency Orders was to mitigate actual or imminent harms caused by disease-causing agents, and to protect people and property.

38.     The Plaintiff's compliance with applicable government orders and the associated loss of use was a covered cause of loss under the Policy.

39.     The Plaintiff's unilateral actions addressing an imminent risk of harm to property or others, regardless of the emergency Orders, are covered under the Policy.

40.     The COVID-19 virus constituted an imminent risk.  A risk of harm that is imminent, as in the case of the COVID-19 virus, is itself a separate covered cause of loss under the Policy.

41.     Orders by the government, acting on its inherent authorities are covered under the Policy, regardless of the actual presence of COVID-19 virus on-site.

42.     Government Orders designating the Plaintiff's business as partially uninhabitable and unusable are covered causes of loss under the Policy.

**IV.     Plaintiff's Business and Business Activities**

43.     The Plaintiff's business operates nine locations including restaurants, bars, pubs, and entertainment venues located in Suffolk County in the Commonwealth of Massachusetts. Among them are:

        a.   The Black Rose, located at 160 State Street, Boston, MA, is one of the city's premier Irish pubs. Serving upscale food and an extensive selection of craft beer, the Black Rose provides ambiance to its customers along with live music every night of the week.

b. The Brownstone, located at 111 Dartmouth Street, Boston, MA is a classic neighborhood bistro offering upscale bar food in addition to extensive offerings of craft beef and cocktails. Under normal circumstances, the Brownstone is open for brunch seven days a week and provides rooms and space for private functions and events.

c. Boston Sports Grille, located at 132 Canal Street, Boston, MA, is a sports bar, providing a place for patrons to watch live sports along with an extensive selection of draft beer, cocktails, and bar food and snacks.

d. Clery's, located at 113 Dartmouth Street, Boston, MA, is a neighborhood bar in the south end of Boston that is regularly voted as "Best of Boston." Serving a variety of bar favorites and upscale entrees, Clery's is a restaurant, bar, and event space that hosts various large gatherings throughout the year, including private functions as well as viewings of live sporting events in season.

e. Central Wharf Company, located at 164 Milk Street, Boston, MA, provides an inviting atmosphere and relies on patronage from people having meals together and enjoying drinks in a leisurely environment. It also provides space for private events and functions to the public year-round and particularly during the holiday season.

f. Coogan's, located at 171 Milk Street, Boston, MA, is a bar that serves food and drinks while also providing entertainment such as karaoke and multiple televisions for sporting events

g.  Dillon's, located at 955 Boylston Street, Boston, MA is located in a historic building located in the city's back bay area that dates back to the 1880's. Along with inviting ambiance and atmosphere, Dillon's provides upscale food and drink as well as space for private events and a place for its patrons to socialize or watch a wide variety of sporting events on multiple televisions.

h.  Granary Tavern, located at 170 Milk Street, Boston, MA, is a gastropub serving upscale bar food in a restored grain mill constructed in 1816. Highlighting its historic features, the Tavern offers ambiance in its dining rooms as well as views from its first-floor patio onto the Rose F. Kennedy Greenway – a greenspace running through the city. The Tavern also offers banquet seating and hosts private events regularly.

i.  Sterling's, located at 60 State Street, Boston, MA, is located in the heart of Boston's Financial District. It offers upscale food and drink in an upscale setting, that is a combination of upscale lounge, vintage bar, and fine dining venue. Its menu includes an extensive offering of fresh local seafood. Its outside patio regularly features live music and relies on business from nearby office workers as well as tourists to the city's historic Faneuil Hall and other attractions.

44.   Due to the government Orders and/or the actual presence of the COVID-19 virus, the Plaintiff experienced significant disruption at the aforementioned businesses.

45.   Sterling's and Dillon's were shutdown completely from March 15, 2020 to June 8, 2020.

46.     Since June 8, 2020, Sterling's and Dillon's have reopened, but have continued to operate at limited capacity, relying more heavily on takeout orders rather than their typical in-restaurant dining. This change has led to a substantial reduction in overall sales at these two locations.

47.     The Black Rose was shut down completely from March 15, 2020 to June 24, 2020.

48.     Since June 24, 2020, the Black Rose has reopened and operated its outdoor patio space and takeout business. With the arrival of the winter months, the Black Rose has been limited to primarily relying on takeout orders.

49.     The Granary Tavern was completely shut down from March 15, 2020 until June 21, 2020.

50.     Upon reopening on June 21, 2020, the Granary Tavern operated in a reduced capacity and relied more heavily on takeout orders than under ordinary circumstances.

51.     Clery's was completely shut down from March 15, 2020 until July 17, 2020.

52.     Upon reopening on July 17, 2020, Clery's resumed business on a limited basis relying more heavily on takeout orders.

53.     Central Wharf Company, the Brownstone, Boston Sports Grille, and Coogan's closed on March 15, 2020 and remain closed as of the filing of this complaint.

54.     While grocers or retailers may provide a simple location for customers to purchase ready-to-eat or take-away food and beverages, the Plaintiff offers something more: an on-premises dining experience which requires the availability of Plaintiff's Covered Properties.

55.     Specifically, the Plaintiff offers more than just a place to eat and enjoy meals, it provides experiences such as, gatherings for private events and holiday parties, karaoke, live music, and live sporting events.

56. The Plaintiff's business at all of the Covered Properties relies on the in-person experience of its patrons.

57. Plaintiff derives a substantial amount of revenue from its on-premises dining and alcohol sales.

58. These services are the essence of the Plaintiff's business and a primary reason its customers pay a premium to make food and alcohol purchases.

## V. The Plaintiff's Losses – The Devastating Slowdown and/or Cessation of the Plaintiff's Business

59. Beginning in March 2020, the Plaintiff was forced to severely restrict the services it could provide at its properties as a result of the emergency Orders described herein, or the presence/imminent risk of the virus, or both, causing it damages and extra expenses.

60. To comply with the emergency Orders, the Plaintiff was required to slow down and eventually cease its business activities, most importantly the provision of on-premises dining and alcohol service.

61. When the Plaintiff closed its restaurant operations, it suffered substantial losses of food and perishable inventories.

62. Beginning March 15, 2020 and continuing through various phases, the Plaintiff was not permitted to provide on-premises dining services, operating in some situations with takeout and delivery services only. After June 8, 2020 (Phase 2), the Plaintiff operated only with limited capacity on-premises dining.

63. The Plaintiff's operations at the Central Wharf Company, the Brownstone, Boston Sports Grille, and Coogan's remain completely closed.

64. As a direct result of the emergency Orders issued by Governor Baker and Mayor Walsh to mitigate risk of physical harm to people and property, or the presence/imminent risk of

the COVID-19 virus on-site, or both, the Plaintiff has incurred property damage constituting a physical loss of and/or damage to their insured properties for regular business operations, which in turn has damaged its business income and required it to incur extra expenses, among other losses, damages and costs.

65.     Specifically, the Plaintiff lost the ability to provide restaurant, alcohol, and private event  sales at the Covered Properties, was denied use of the Covered Properties to provide restaurant, alcohol and private event sales at their Covered Properties, their customers were prevented from physically occupying the Covered Properties, causing the Covered Properties to be physically uninhabitable by customers and employees, causing the Plaintiff's core business functions to be nearly eliminated or destroyed, all of which caused and constituted a suspension of the Plaintiff's business operations at its Covered Properties.

66.     Prior to above-referenced partial reopening at certain Covered Properties, the Plaintiff repaired its premises by fixing various faults, including but not limited to, additional cleaning and decontamination, the creation of outdoor eating spaces integrated with its premises, the addition of plexiglass, the reconfiguration of the interior of its business, and other actions.

67.     This loss of and/or damage to the Plaintiff's insured properties caused the Plaintiff a substantial loss of business income with substantial incurred extra expenses for renovations, retrofitting, cleaning, training, and re-stocking.

68.     As a result of the emergency Orders, or the COVID-19 virus, or both, the Plaintiff suffered economic business income and extra expense losses.

69.     The Plaintiff alternatively states that it suffered direct physical loss of, or damage to its property causing economic business income and extra expense losses, as a result of: actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

    a.   actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

    b.   its reasonable actions—regardless of government orders—to preserve property and persons from an imminent risk of harm; or

    c.   the risk of imminent harm, as said risk of imminent harm is itself a covered cause of loss; or

    d.   government Orders designating the Plaintiff's business as uninhabitable and unusable on premises and in other forms; or

    e.   government Orders pursuant to inherent authorities to act in a disaster regardless of the actual presence of COVID-19 virus on-site; or

    f.   the availability of other coverages under the Policy.

70.    The Plaintiff's losses and expenses at its Covered Properties have continued through the date of filing of this action, and various operation restrictions in the emergency Orders are likely to continue.

71.    The Plaintiff's actions were reasonable and necessary to comply with the various Orders or to mitigate the damages described herein to prevent greater harms, or both.

72.    The Plaintiffs causes of loss are not excluded by the Policy.

73.    The Plaintiff has suffered substantial losses of insured business income and has incurred insured expenses caused by insured causes of loss within the terms and conditions of the Policy, or the common law.

**VI.    Plaintiff Purchased Insurance for Its Business, Not Just Its Buildings**

74.    In order to protect its property, businesses, and income from losses, prior to September 29, 2019, the Plaintiff purchased the Policy sold by Defendant.

75.     At all relevant times, the Policy was in full effect as the Plaintiff paid the substantial premiums due which Defendant accepted.  The Plaintiff has been insured by Defendant for the last several years, paying the required premiums annually.

76.     At all times, the Plaintiff has relied on the Defendant's promises to cover its insured business income losses and its additional extra expenses caused by such losses.

77.     The premium the Plaintiff paid included coverages for, *inter alia*, buildings and personal property, business income and extra expense,  and commercial liability.  It also included additional coverage for 'extended' business income and civil authority. The coverages are set forth in Exhibit A.

**VII.    The Insurer's Duties, its Arbitrary Denial and Company Line**

78.     The Plaintiff, like others, purchased the Policy for business income protection caused by unforeseen disaster.

79.     During such times, individuals and businesses, including the Plaintiff, are vulnerable and dependent on the Defendant's promises of coverage, a fact of which insurance companies, including the Defendant, have knowledge.  Insurance companies promise, warrant and sell "peace of mind" that in the unlikely event of a catastrophe or disaster the policyholder will be fully and promptly protected.

80.     The contract of insurance carries with it a duty of utmost good faith on the part of the insurer because of the vulnerability of policyholders during and following an insured cause of loss.  The Defendant's duties include but are not limited to Defendant's obligation to fairly and quickly adjust the Plaintiff's claims to determine coverage and amount of loss, adjust its insurance claims, and provide prompt payment.

81.     In addition to a contractual duty, an insurer's duty of good faith and fair dealing exists under both Massachusetts common law, G. L. c. § 176D and G. L. c. 93A and regulations of the Commonwealth thereto.

82.     Here, the Defendant failed to make a good faith investigation, determine coverage and adjust the Plaintiff's claims because the Defendant reached a pre-determined conclusion to deny coverage.

83.     On July 27, 2020, the Plaintiff provided its first notice of loss to the Defendant that it had incurred business income losses during the policy term.

84.     After a single telephone call with counsel for the Plaintiff, the Defendant issued a denial letter on or about August 24, 2020.  See, Exhibit B.

85.     The Defendant summarily and arbitrarily asserted that the Plaintiff's losses were not caused from direct physical loss of or damage to covered property, but provided no basis therefore.

86.     The Defendant summarily and arbitrarily did not adjust potential losses under the Policy coverages, simply relying on Defendant's pre-determined conclusions of no coverage.

87.     Without reasonable investigation, the Defendant made summary coverage determinations as to the inapplicability of civil authority coverage or other coverages, but provided no basis for their factual conclusions.

88.     For example, the Defendant did not consider, nor did it have any procedures to consider that Massachusetts law has recognized the "direct physical loss of or damage to" language as ambiguous in cases where, as here, dangerous gases or substances entered a building.

89.     Instead, the Defendant chose to issue a blanket-denial of coverage in violation of its statutory and contractual duties for the purpose of saving its bottom line.

90.     The Defendant also purported to disclaim coverage because of the "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" without factual discussion or consideration of the subject exclusion's reach being limited to instances of man-made outdoor pollution.

91.     Upon information and belief, the Defendant used similar or identical coverage decision language in different states, without regard for applicable state statutory and decisional case law affecting coverage.

92.     At all relevant times, the Defendant adopted an arbitrary policy to deny all business interruption claims like the Plaintiff's, despite different circumstances, different executive orders, and differences in policies.

93.     The Defendant's one-size-fits-all approach to their contractual, statutory and common law duties to act reasonably and in good faith to investigate claims, decide policy coverage, and make claim adjustments has led to the improper denial of countless business interruption claims, including the Plaintiff's.

94.     The Plaintiff has now been forced to file a lawsuit and will expend considerable efforts pursuing this action.

95.     The Plaintiff has faithfully paid its premiums.  Yet, when the Plaintiff made a claim because of a catastrophic business interruption caused by state and local emergency Orders, or in the alternative, the COVID-19 virus, or both, the Defendant summarily and arbitrarily denied the Plaintiff's claims.  At all relevant times, the Plaintiff relied on its business interruption insurance to cover what it is supposed to cover – replacement of business income and payment of ongoing expenses in order to rebuild its businesses.

96.     Accordingly, the Plaintiff brings this suit in response to Defendant's breach of its contractual obligations and its violation of statutory and lawful obligations to pay the Plaintiff's covered losses; and in response to Defendant's failure or refusal to adjust the Plaintiff's claims under applicable coverages, and promptly pay the Plaintiff's business income losses and claims.

97.     The losses the Plaintiff suffered are covered under the Policy, but the Defendant has denied coverage despite the Plaintiff's notice of its claim.

**VIII.   Relevant Policy Provisions Provide Coverage for the Plaintiff's Loss**

98.     The losses and expenses incurred by the Plaintiff's business operations are covered under various Policy provisions.

99.     The Policy must be read as a whole in light of its purpose and the reasonable expectation of the parties. The Policy is an all-risk commercial property insurance policy that provides coverage for physical loss of or damage to the insured property unless expressly limited or excluded by language in the body of the Policy or through a separate exclusion endorsement.

100.     There are no applicable exclusions in the Policy for loss of business income caused by emergency Orders, or the COVID-19 virus; or alternatively, otherwise resulting in the physical loss of or damage to the Plaintiff's properties.

**A.     Business Income and Extra Expense Coverage**

101.     The Plaintiff's business interruption coverage provides for loss of business income.

102.     The Policy provides:

"We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'. The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations…

See, Ex. "A", at 0045.

103.     "Business income" is defined in relevant part as "(1) "(a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (b) Continuing normal operating expenses incurred, including payroll." *Id*.  "Operations" is defined as "business activities occurring at the described premises…" *Id*. at 0054.

104.     The Plaintiff has suffered and continues to suffer substantial loss of Business Income during the policy term which was caused by the loss of or damage to its insured property at the Covered Properties.

105.     The Policy also includes coverage for 'Extra Expense' which are "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." *Id*. at 0045.  Here, the Plaintiff incurred extra expenses relating to, *inter alia*, cleaning, sanitization, repair, and personal protective equipment for its employees and staff.

106.     Of course, the period of restoration has not ended, and additional repairs may be necessary.

**B.     Civil Authority Coverage**

107.     The Policy also includes coverage for Civil Authority coverage which means

> "…the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, provided that both of the following apply: (1) [a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

See, Exhibit "A", at HH0046.

108.     As described above, Orders from a civil authority caused the Plaintiff's Covered Properties to be physically uninhabitable and/or substantially unusable.  In turn, the prohibited access to and use of the Plaintiff's insured properties caused the Plaintiff to incur covered business income losses and incur necessary extra expenses.

## COUNT I
## BREACH OF CONTRACT

109.     The Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

110.     The Plaintiff purchased the Policy - a commercial property insurance policy - from the Defendant.

111.     The Plaintiff has performed all its obligations as specified by the Policy including but not limited to the payment of all premiums due, cooperating in loss investigation, and seeking to avoid avoidable additional losses.

112.     The Policy provides coverage for losses, expenses, damages and costs, including but not limited to costs and expenses incurred mending or repairing the premises, business income loss, extended business income loss, and/or extra expense coverages.

113.     The Plaintiff has suffered and continues to suffer physical loss of and/or damage to its Covered Properties, which was caused by or resulted from the emergency Orders described herein.

114.     In the alternative, the Plaintiff suffered and continues to suffer physical loss of and/or damage to the Covered Properties, which was caused by or resulted from the ubiquitous presence of the COVID-19 virus, and the numerous civil authority orders, and emergency orders, or both, all of which qualify as types of loss that "all risk" property policies are designed to insure.

115.     The Plaintiff further alternatively states that it suffered and continues to suffer

physical loss of, or damage to its insured properties at the covered locations, which was caused by or resulted from:

    a.   actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

    b.   its reasonable actions—regardless of government orders—to preserve property and persons from an imminent risk of harm; or

    c.   the risk of imminent harm, which is itself a covered cause of loss; or

    d.   government Orders designating the Plaintiff's business as uninhabitable and unusable on premises and in other forms; or

    e.   government Orders pursuant to inherent authorities to act, regardless of the actual presence of COVID-19 virus on-site; or

    f.   the availability of other coverages under the Policy.

116.    The physical loss of and/or damage to the Plaintiff's insured properties caused the necessary slowdown and cessation of the Plaintiff's business activities, resulting in a loss of business income.

117.    The Policy also provides that the Defendant will pay for any necessary expenses that the Plaintiff incurs that it would not have incurred had there been no physical loss of or damage to its property.

118.    The Defendant is in breach of the Policy by refusing to adjust potential losses under other potentially applicable coverages, such as the Civil Authority coverage.

119.    As a result of the Defendant's repudiation or breach of the insurance policies, the Plaintiff has suffered damages.

**WHEREFORE**, the Plaintiff seeks compensatory damages resulting from the Defendant's breach of contract and further seeks all relief deemed appropriate by this Court, including attorneys' fees, interest as provided by G. L. c. 231, § 6C, and costs.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

120.    The Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

121.    In the Commonwealth, the Defendant is bound by the implied contractual covenant of good faith and fair dealing.

122.    The Defendant did violate the covenant of good faith and fair dealing by, including but not limited to, using a predetermined decision not to cover any claim, even where, as here, no applicable virus exclusion appears; failing to properly inquire into relevant facts supporting the Plaintiff's claim; failing to take the appropriate procedures for handling the Plaintiff's claim; declining to make clear, and good faith efforts to resolve the contractual relationship between the Plaintiff and the Defendant. In addition, the adjustment did not consider or acknowledge that Massachusetts case law has recognized the "direct physical loss of or damage to" language as ambiguous in cases here dangerous gases or substances entered a building.

**WHEREFORE**, the Plaintiff seeks compensatory damages resulting from the Defendant's breach of covenant of good faith and fair dealing, and further seeks all relief deemed appropriate by this Court, including attorneys' fees, interest as provided by G. L. c. 231, § 6C, and costs.

## COUNT III
## VIOLATION OF G. L. c. 93A

123.    The Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

124.    Defendants are engaged in trade or business in the Commonwealth within the meaning of G. L. c. 93A, §§ 2 and 11.

125.    On or about, November 16, 2020, by and through its counsel, the Plaintiff served a demand letter pursuant to G. L. c. 93A upon the Defendant.

126.    In addition to the breaches and violations already set forth herein, the Defendant's conduct violates, *inter alia*, the provisions of G. L. c. 176D, § 3, including but not limited to:

    a.   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

    b.   Compelling insureds to engage in litigation to recover amounts due under an insurance policy;

    c.   Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

    d.   Failing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

    e.   Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

    f.   Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

    g.   Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

See G.L. c. 176D § 3(9).

127.   Defendants' conduct as alleged herein constitutes knowing unfair and deceptive acts and practices in violation of G. L. c. 93A, the Attorney General's regulations, and G. L. c. 176D.

**WHEREFORE**, Plaintiff seeks compensatory damages resulting from the Defendant's G.L. c. 93A violations and further seeks all relief deemed appropriate by this Court, including attorneys' fees, interest as provided by G. L. c. 231, § 6C, punitive damages and costs.

## DEMAND FOR A JURY TRIAL

Plaintiff requests a jury trial for all Counts for which a trial by jury is permitted by law.

Respectfully submitted,
Attorneys for Plaintiff

January 6, 2021

/s/ J. Tucker Merrigan
J. TUCKER MERRIGAN, BBO # 681627
PETER M. MERRIGAN, BBO # 673272
THOMAS T. MERRIGAN, BBO # 343480
EVAN K. BUCHBERGER, BBO # 686134
**SWEENEY MERRIGAN LAW, LLP**
268 Summer Street, LL
Boston, Massachusetts 02210
Tel.:    617-391-9001
Fax:    617-357-9001
tucker@sweeneymerrigan.com
peter@sweeneymerrigan.com
tom@sweeneymerrigan.com
evan@sweeneymerrigan.com

And

/s/ Allan Kanner
Allan Kanner, Esq. (*pro hac vice* forthcoming)
Cynthia St. Amant, Esq. (*pro hac vice* forthcoming)
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
Fax: (504) 524-5763
a.kanner@kanner-law.com
c.stamant@kanner-law.com

25

Exhibit A



# Commercial Insurance Protection

## CLAIM NOTICE

| | |
|---|---|
| **Mail notices to:** | **RSUI Group, Inc.**<br>**945 East Paces Ferry Rd.**<br>**Suite 1800**<br>**Atlanta, GA 30326-1160** |
| **Fax notices to:** | **(404) 231-3755**<br>**Attn: Claims Department** |
| **E-mail notices to:** | **reportclaims@rsui.com** |

RSG 94001 0916

# COMMON POLICY DECLARATIONS

**RSUI**

COMPANY NAME:   RSUI Indemnity Company

BRANCH ADDRESS:   945 East Paces Ferry Road, Suite 1800, Atlanta, GA  30326-1160

POLICY NO.:  NHD909990                    RENEWAL OF:   NHD905667

**NAMED INSURED AND MAILING ADDRESS:**                    **PRODUCER:**

The Glynn Hospitality Group, Inc.
(Name Incomplete - refer to RSG 94037 1103)
83 Central Street
Boston, MA 02109

**POLICY PERIOD: From**   9/29/2019   **To**   9/29/2020   12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.
**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM | COMM. |
|---|---|---|
| **Commercial Property**      RSG 40001 0719 | $            23,810.00 | DO NOT WRITE IN THIS AREA |
| | $ | |
| | $ | |
| **STATE ASSESSMENTS & FEES** | | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| | $ | |
| **Premium Excluding Terrorism** | $            23,810.00 | |
| **Terrorism Premium** | $             1,190.00 | |
| | $ | |
| **TOTAL** | $            25,000.00 | |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS, RSG 94106 1009

**BUSINESS DESCRIPTION:**  Restaurants and Sports Bars

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Countersigned:   October 25, 2019        By: _____
                         Date            bhm            Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001

RSG 40003 0913

A member of Alleghany Insurance Holdings LLC

| Policy Number: | NHD909990 |
|---|---|
| Insurer: | RSUI Indemnity Company |
| Named Insured: | The Glynn Hospitality Group, Inc. |
| | |

## NOTICE - DISCLOSURE OF TERRORISM PREMIUM

In accordance with the federal Terrorism Risk Insurance Act, as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown below.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**DISCLOSURE OF PREMIUM**

The portion of your premium for the policy term attributable to coverage for all acts of terrorism covered under this policy including terrorist acts certified under the Act is $ 1,190.00 .

**DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap Insurer Participation In Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS



**1. POLICY NO.**  NHD909990                          **EFFECTIVE DATE** 9/29/2019

**2. NAMED INSURED**  The Glynn Hospitality Group, Inc.

**RENEWAL OF** NHD905667

### 3. DESCRIPTION OF PREMISES                    ☐ "X" If supplemental declarations attached

| Prem. No. | Bldg. No. | Location, Construction and Occupancy |
|---|---|---|
| All | All | Refer to RSG 94063 0404 |

**COVERAGES PROVIDED** - Insurance at the described premises applies only for coverages for which a limit of insurance is shown.

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance | Rates |
|---|---|---|---|---|---|---|
| All | All | Refer to RSG 94063 0404 | Refer to RSG 94063 0404 | Speical | NIL | Included |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

**OPTIONAL COVERAGES** - Applicable only when entries are made in the schedule below.

| Prem. No. | Bldg. No. | Agreed Value Expiration Date | Coverage | Amount | Replacement Cost (X) Building | Personal Property | Including "Stock" |
|---|---|---|---|---|---|---|---|
| All | All | | | | X | X | |

| Prem. No. | Bldg. No. | Inflation Guard (Percentage) Building | Personal Property | * Monthly Limit of Indemnity (Fraction) | * Maximum Period of Indemnity (X) | * Extended Period of Indemnity (Days) |
|---|---|---|---|---|---|---|
| | | | | | | |

* APPLIES TO BUSINESS INCOME ONLY

### 4. MORTGAGE HOLDERS AND/OR LOSS PAYEES

| Prem. No. | Bldg. No. | Mortgage Holder and/or Loss Payee Name and Mailing Address |
|---|---|---|
| | | N/A |

### 5. DEDUCTIBLE
Please refer to the Deductible & Period of Restoration Endorsement-RSG 94068 *(edition date of form RSG 94068 purposefully omitted in this reference).*

**TOTAL PREMIUM FOR THIS COVERAGE PART** ⇨ $ INCLUDED

### 6. FORMS / ENDORSEMENTS APPLICABLE

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS, RSG 94106 1009

THESE DECLARATIONS, WHEN COMBINED WITH THE COMMON POLICY DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.

Includes copyrighted material of ISO Commercial Risk Services, Inc., with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1984.

RSG 40001 0719

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title |
|---|---|
| RSG 94037 1103 | Named Insured |
| RSG 94053 0506 | Schedule of Sublimits |
| RSG 94063 0404 | Schedule Of Locations, Coverages And Limits |
| RSG 94068 0714 | Deductible and Period of Restoration Endorsement |
| RSG 93048 0711 | Massachusetts Changes - Cancellation and Nonrenewal |
| RSG 94007 1014 | Earthquake Endorsement |
| RSG 94008 0614 | Flood Coverage Endorsement |
| RSG 94009 0510 | Joint Loss Clause |
| RSG 94027 0206 | Minimum Earned Premium Clause - Percentage |
| RSG 94109 0116 | Protective Safeguards |
| RSG 96014 0504 | Exclusion of Pathogenic or Poisonous Biological or Chemical Material |
| RSG 96020 0615 | Flood Exclusion - Specified Locations and or Property |
| RSG 96066 0518 | Cyber, Electronic Data and Systems Exclusion |
| RSG 96068 1218 | Exclusion - Marijuana |
| IL 0017 1198 | Common Policy Conditions |
| RSG 94143 0716 | Ingress - Egress Coverage |
| CP 0010 1012 | Building and Personal Property Coverage Form |
| CP 0030 1012 | Business Income (And Extra Expense) Coverage Form |
| CP 0090 0788 | Commercial Property Conditions |
| CP 0109 1000 | Massachusetts Changes |
| CP 0417 1012 | Utility Services - Direct Damage |
| CP 1030 1012 | Causes of Loss - Special Form |
| CP 1545 1012 | Utility Services - Time Element |

**Policy No.:**  NHD909990

RSG 94106 1009

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# NAMED INSURED

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The Glynn Hospitality Group, Inc.

One Hundred Seventy Three Milk Street, Inc. dba Coogan's Bluff

Friar Ventures, L.L.C. dba Hurricane O'Reiley's

Black Rose, Inc. dba The Black Rose

KMF Hospitality, Inc. dba Central Wharf Co. (Formerly Jose McIntyre's)

ATG, Inc. dba Clery's

Ballyboggan, L.L.C. dba Dillon's

111, L.L.C. dba Brownstone

170, L.L.C. dba Granary Tavern

Fohenagh, L.L.C. dba Sterling's

Social 132, LLC dba Sports Grille Boston

RSG 94037 1103

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# SCHEDULE OF SUBLIMITS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following sublimits are part of, not in addition to, the Limit of Insurance shown in the Policy Declarations.

| SUBLIMIT | COVERAGE | APPLIES TO FORM/ENDORSEMENT |
|---|---|---|
| $250,000 | Ingress / Egress | RSG 94143 0716 |
| $250,000 | Utility Service (Direct Damage and Time Element Combined) | CP 0417 1012 CP 1545 1012 |

RSUI INDEMNITY COMPANY

## SCHEDULE OF LOCATIONS, COVERAGES AND LIMITS

| Prem. No. | Bldg. No. | Address/Construction/Occupancy | Coverage | Limit of Insurance |
|---|---|---|---|---|
| 1 | All | 171-173 Milk Street<br>Boston, MA  02110<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $541,555 |
| 2 | All | 160 State Street<br>Boston, MA  02109<br>Masonry Non-Combustible<br>Pub | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $644,444 |
| 3 | All | 164-166 Milk Street<br>Boston, MA  02109<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $524,444 |
| 4 | All | 333 Columbus Avenue<br>Boston, MA  02116<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $733,333 |
| 5 | All | 955 Boylston Street<br>Boston, MA  02115<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $673,888 |
| 6 | All | 111 Dartmouth Street<br>Boston, MA  02116<br>Joisted Masonry<br>Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $407,222 |
| 7 | All | 168-178 Milk Street<br>Boston, MA  02109<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $700,000 |
| 8 | All | 60 State Street<br>Boston, MA  02109<br>Masonry Non-Combustible<br>Restaurant / Offices | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $450,000 |
| 9 | All | 83 Central Street<br>Boston, MA  02109<br>Joisted Masonry<br>Management Office | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $140,000 |
| 10 | All | 132-134 Canal Street<br>Boston, MA  02114<br>Joisted Masonry<br>Restaurant / Bar | Blanket Personal Property and Business Income with Extra Expense including "Rental Value" | $160,000 |

**Policy No.:**  NHD909990     **Effective:**  9/29/2019

**Policy No: NHD909990  Effective: 9/29/2019**                                  **RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# DEDUCTIBLE AND PERIOD OF RESTORATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event that multiple deductibles apply in any one occurrence, unless it is addressed elsewhere in this endorsement, only the largest minimum deductible shall apply.

| | |
|---|---|
| **Covered Cause(s) of Loss:** | All Covered Perils, except |
| **Applicable Location,  Building or Property:** | All |
| **Deductible:** | $5,000 per occurrence (Property Damage) |
| **Revised Period of Restoration:** | |

| | |
|---|---|
| **Covered Cause(s) of Loss:** | Earthquake including Earthquake Sprinkler Leakage |
| **Applicable Location,  Building or Property:** | All |
| **Deductible:** | $25,000 per occurrence (Combined Property Damage and Business Income) |
| **Revised Period of Restoration:** | |

| | |
|---|---|
| **Covered Cause(s) of Loss:** | Flood |
| **Applicable Location,  Building or Property:** | All |
| **Deductible:** | $25,000 per occurrence (Combined Property Damage and Business Income) |
| **Revised Period of Restoration:** | |

| | |
|---|---|
| **Covered Cause(s) of Loss:** | |
| **Applicable Location,  Building or Property:** | |
| **Deductible:** | |
| **Revised Period of Restoration:** | |

| | |
|---|---|
| **Covered Cause(s) of Loss:** | |
| **Applicable Location,  Building or Property:** | |
| **Deductible:** | |
| **Revised Period of Restoration:** | |

| |
|---|
| **Covered Cause(s) of Loss:** |
| **Applicable Location,  Building or Property:** |
| **Deductible:** |
| **Revised Period of Restoration:** |

**A.  Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition, the Agreed Value Optional Coverage or with any applicable condition of this policy. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**B.  Deductible Amount by Covered Cause of Loss**

The amount of your Deductible may vary based upon the Covered Causes of Loss.  The Deductible amount will be stated in the Schedule above and may be on a fixed dollar or percentage basis.  Please review the Schedule above carefully.

If this policy provides both Windstorm or Hail and Named Storm as Covered Causes of Loss, the amount of your Deductible for each of these Covered Causes of Loss may be different.

**C.  Deductible Amount by Coverage Type**

The amount of your Deductible may vary based upon the type of coverage.  The Deductible amount will be stated in the Schedule above and may be on a fixed dollar or percentage basis.  Please review the Schedule above carefully.

**D.  Deductible Percentage Amount**

Unless otherwise stated in the Schedule above, if the Deductible is expressed as a percentage, the Deductible is calculated separately for and applies separately to:

**1.**  Each building that sustains loss or damage;

**2.**  The personal property at each building at which there is loss or damage to personal property;

**3.**  Personal property in the open.

**4.**  Business Income, including Tuition Fees, Extra Expense, Additional Living Expense, Loss of Rent or Rental Value, and Leasehold Interest.

**5.**  When property is covered under the Coverage Extension for Newly Acquired Or Constructed Property: In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to a percentage of the value(s) of the property at time of loss. The applicable percentage for Newly Acquired Or Constructed Property is the highest percentage shown in the Schedule for any described premises.

If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property.

**E.  Deductible Application**

The Deductible will be applied and calculated to loss or damage to Covered Property on a Per Occurrence basis or by Policy Location, subject to the Limit of Insurance.  Your Deductible will be applied as stated in the Schedule above. Please review the Schedule above carefully.

**1.**  <u>Per Occurrence</u> – If your Deductible for a specific Covered Cause of Loss is applied Per Occurrence, your Deductible will be applied to the total of all loss or damages to Covered Property under this Policy directly resulting from a Covered Cause of Loss

**2.** <u>Location Application</u> – If your Deductible for a specific Covered Cause of Loss is applied by Location, your Deductible will be applied to the total of all loss or damages to each Covered Location under this Policy directly resulting from a Covered Cause of Loss.  If two or more Covered Locations are insured under this Policy, then the deductible will be applied separately at each Covered Location against the sum of all loss or damages incurred.

**F.   Frequency of Deductible During the Policy**

Unless otherwise stated in the Schedule above and/or the Calendar Year Named Storm Percentage Deductible endorsement, if attached to this policy, the Deductible applicable to any loss or damage will be applied separately to each such occurrence of loss or damage during the Policy Period.

**G.   Business Income Deductible – Percentage or Dollar Amount**

**1.** If Business Income Coverage is provided on this policy and a Deductible is stated in the Schedule above, no liability shall exist under this policy for loss of Business Income, including loss of Business Income caused by action of Civil Authority, unless the determined Business Income loss, occurring at locations covered hereunder, exceeds the stated Business Income Deductible.

**2.** The Business Income Deductible may vary based upon the Covered Causes of Loss.  Please review the Schedule above carefully.

**3.** For any Location(s) on the policy that have a Business Income Deductible stated in the Schedule above the following applies:

**a.** "Period of Restoration" in the BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – CP 0030, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM – CP 0032, BUSINESS INCOME ENDORSEMENT – RSG 74001 and BUSINESS INCOME ENDORSEMENT – RSG 74029 is replaced by the following:

"Period of Restoration" means the period of time that:

**(1)** Begins at the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**(2)** Ends on the earlier of:

**(a)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(b)** The date when business is resumed at a new permanent location.

"Period of Restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "Period of Restoration".

**b.** Civil Authority Coverage for Business Income will begin immediately after the time of first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

**H.   Additional Expense - Soft Cost Coverage Deductible**

If Additional Expense - Soft Cost Coverage is provided on this policy and a Deductible is state in the Schedule above, no liability shall exist under this policy for any loss or damage of soft costs or rents unless the **Delay** exceeds the number of days stated in the Schedule above, beyond the **Anticipated Date of Completion.**  We will then pay that part of the loss or damage which occurs after this time, up to the applicable Limit of Insurance.  In the event that the **Delay** results from more than one occurrence, a separate deductible will be applied for each occurrence.

**I.   Revised Period of Restoration - Business Income**

**1.**   If the Schedule indicates an hour time period different than 72 hours, then the 72-hour time period in the definition of "Period of Restoration" is replaced by the number hours stated in the Schedule above.  Therefore, the "Period of Restoration" for Business Income Coverage begins the number of hours stated in the Schedule above, after the direct physical loss or damage, subject to all other provisions of the definition of "Period of Restoration".

**2.**   The 72-hour time period in the Civil Authority Additional Coverage is replaced by the number of hours stated in the Schedule above.  Therefore, coverage under the Additional Coverage – Civil Authority begins the number of hours stated in the Schedule above, after the time of action of civil authority, subject to all other provisions of that Additional Coverage.

**J.   Specific Dollar Deductible Examples**

1.   EXAMPLE (This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $      250 |
| Limit of Insurance – Building #1: | $  60,000 |
| Limit of Insurance – Building #2: | $  80,000 |
| Loss to Building #1: | $  60,100 |
| Loss to Building #2: | $  90,000 |

The amount of loss to Building #1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building #1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building #1:

$  60,100

−      250

$  59,850 Loss Payable – Building #1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building #2. Loss payable for Building #2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + $80,000 = $139,850

2.   EXAMPLE (This example, too, assumes there is no Coinsurance penalty**.)**

The Deductible and Limits of Insurance are the same as those in Example #1.

| | |
|---|---|
| Loss to Building #1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building #2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building #1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building #2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**K.   Percentage Deductible Examples**

1.   **EXAMPLE – SPECIFIC INSURANCE**

The amount of loss to the damaged building is $60,000.

The value of the damaged building at time of loss is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the Coinsurance requirement is $80,000 (80% of $100,000).

The **actual** Limit of Insurance on the damaged building is $70,000.

The Deductible is 1%.

Step **(1):**     $70,000 ÷ $80,000 = .875

Step **(2):**     $60,000 x .875 = $52,500

Step **(3):**     $70,000 x 1% = $700

Step **(4):**     $52,500 – $700 = $51,800

The most we will pay is $51,800. The remainder of the loss, $8,200, is not covered due to the Coinsurance penalty for inadequate insurance (Steps **(1)** and **(2)**) and the application of the Deductible (Steps **(3)** and **(4)**).

2.  **EXAMPLE #2 – SPECIFIC INSURANCE**

The amounts of loss to the damaged property are $60,000 (Building), $40,000 (Personal Property in building) and $10,000 (Business Income).

The value of the damaged building at time of loss is $100,000. The value of the personal property in that building is $80,000. The value of the Business Income was $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the Coinsurance requirement are $80,000 (80% of $100,000) for the building, $64,000 (80% of $80,000) for the personal property and $80,000 (80% of $100,000) for Business Income.

The **actual** Limits of Insurance on the damaged property are $80,000 on the building, $64,000 on the personal property and $80,000 for Business Income (therefore no Coinsurance penalty).

The Deductible is 2%.

**BUILDING**

Step **(1):**  $80,000 x 2% = $1,600

Step **(2):**  $60,000 – $1,600 = $58,400

**PERSONAL PROPERTY**

Step **(1):**  $64,000 x 2% = $1,280

Step **(2):**  $40,000 – $1,280 = $38,720

**BUSINESS INCOME**

Step **(1):**  $80,000 x 2% = $1,600

Step **(2):**  $10,000 – $1,600 = $8,400

The most we will pay is $105,520. The portion of the total loss not covered due to application of the Deductible is $4,480.

3.  **EXAMPLE #3 – BLANKET INSURANCE**

The sum of the values of Building #1 ($500,000), Building #2 ($500,000) and Building #3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,800,000 (90% of $2,000,000).

The **actual** Blanket Limit of Insurance covering Buildings #1, #2, and #3, shown in the Declarations, is $1,800,000 (therefore no Coinsurance penalty).

Buildings #1 and #2 have sustained damage; the amounts of loss to these buildings are $40,000 (Building #1) and $20,000 (Building #2).

The Deductible is 2%.

**BUILDING #1**

Step **(1)**:  $500,000 \times 2\% = $10,000

Step **(2)**:  $40,000 – $10,000 = $30,000

**BUILDING #2**

Step **(1)**:  $500,000 \times 2\% = $10,000

Step **(2)**:  $20,000 – $10,000 = $10,000

The most we will pay is $40,000. The portion of the total loss not covered due to application of the Deductible is $20,000.

4.  **EXAMPLE #4 – BLANKET INSURANCE**

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), Personal Property at Building #1 ($250,000), Personal Property at Building #2 ($250,000), Business Income at Building #1 ($100,000) and Business Income at Building #2 ($100,000) , as shown in the most recent Statement of Values on file with us, is $1,700,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the Coinsurance requirement is $1,530,000 (90% of $1,700,000).

The **actual** Blanket Limit of Insurance covering Buildings #1 and #2, Personal Property at Buildings #1 and #2, and Business Income at Buildings #1 and #2, shown in the Declarations, is $1,530,000. Therefore there is no Coinsurance penalty.

Building #1 and Personal Property at Building #1 have sustained damage; the amounts of loss are $95,000 (Building), $5,000 (Personal Property) and $20,000 (Business Income).

The Deductible is 5%.

**BUILDING**

Step **(1)**:  $500,000 \times 5\% = $25,000

Step **(2)**:  $95,000 – $25,000 = $70,000

**PERSONAL PROPERTY**

Step **(1)**:  $250,000 \times 5\% = $12,500

The loss, $5,000, does not exceed the Deductible

**BUSINESS INCOME**

Step **(1)**:  $100,000 \times 5\% = $5,000

Step **(2)**:  $20,000 – $5,000 = $15,000

The most we will pay is $85,000. The remainder of the building loss ($25,000) and business income loss ($15,000) is not covered due to application of the Deductible. There is no loss payment for the personal property.

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MASSACHUSETTS CHANGES –
# CANCELLATION AND NONRENEWAL

The following conditions are added and supersede any provisions to the contrary:

## A. CANCELLATION

This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time.  This policy may be cancelled at any time by this company by giving to the insured a five (5) days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty (20) days written notice of cancellation except where the stated reason for cancellation is non-payment of premium, where, in such instance, this policy may be cancelled at any time by this company by giving to the insured a ten (10) days written notice of cancellation, and the mortgagee a twenty (20) days written notice of cancellation,  with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand.  Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation.

After this policy has been in effect for sixty (60) days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** nonpayment of premium;

**(2)** conviction of a crime arising out of acts increasing the hazard insured against;

**(3)** discovery of fraud or material misrepresentation by the insured in obtaining the policy;

**(4)** discovery of willful or reckless acts or omissions by the insured increasing the hazard insured against;

**(5)** physical changes in the property insured which result in the property becoming uninsurable; or

**(6)** a determination by the commissioner that continuation of the policy would violate or place the insurer in violation of the law.  Where the stated reason is nonpayment of premium, the insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

## B. NONRENEWAL

This provision applies to coverage on real property which is used predominantly for residential purposes and consists of not more than four dwelling units, and to coverage on personal property of a person residing in such real property:

**1.** Ordinarily we will renew this policy automatically and send you the renewal notice. Our notice will explain what you should do if you do not want to continue this policy.

**2.** We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your last mailing address shown in the Declarations, written notice of nonrenewal, accompanied by the specific reasons for nonrenewal, at least 45 days before the expiration date of this policy. However, if your policy was executed on behalf of us, in whole or in part, by or on behalf of your insurance agent or our insurance broker, we will send such written notice only to the agent or broker. Every insurance agent or broker receiving this notice is required to, within 15 days of its receipt, send a copy to you unless the agent or broker has replaced the insurance.

**Policy No.: NHD909990**     **Effective:** 9/29/2019

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy. Please Read It Carefully.*

# EARTHQUAKE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

1. It is agreed that this policy covers loss or damage to the insured property as a result of earthquake. The coverage provided under this endorsement ☒ covers ☐ does not cover the peril of earthquake sprinkler leakage.

2. For the purpose of this insurance, Earthquake shall be defined as follows:

   A. Quaking, vibratory or undulating movement of a portion of the earth's crust, produced by tectonic or underground volcanic forces or by breaking, shaking, trembling or shifting of rock beneath the earth's crust. This definition of Earthquake does not include subsidence, landslide, rock slide, mudflow, earth rising, earth sinking, earth shifting or settling; unless, as a direct result of such Earthquake.

   Earthquake shock shall be defined as the sum total of all the Insured's losses attributable directly from the peril of Earthquake sustained during any period of seventy-two (72) consecutive hours by reason of one Earthquake shock or a series of Earthquake shocks.

   B. Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

   Volcanic Eruptions that occur within any one hundred sixty eight (168) hour period will constitute a single Volcanic Eruption. The expiration of this policy will not reduce the one hundred sixty eight (168) hour period.

3. Limits of Liability:

   The liability of the Company for loss or damage caused by earthquake shall not exceed the sum of $5,000,000* for loss or damage at any one insured location; however, the limit of liability shown above shall not exceed the sum of $5,000,000 due to any one earthquake occurrence for all locations combined, nor for all earthquake losses occurring in any one year period or policy period, whichever is less, commencing 9/29/2019.

   *however, not to exceed the limits on any one item as shown elsewhere in this policy

4. Deductible:

   Please refer to the Deductible & Period of Restoration Endorsement-RSG 94068 *(edition date of form RSG 94068 purposefully omitted in this reference)*.

5. The Company shall not be liable for any loss or damage:

   A. occurring before this policy becomes effective; or

   B. occurring after termination of this policy, except loss or damage arising from an occurrence in progress when this policy is terminated.

6. If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the peril described in Paragraph 2 above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

All other terms, conditions and warranties remain unchanged.

**Policy No.:** NHD909990    **Effective:** 9/29/2019

RSG 94007 1014

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLOOD COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## ALL COVERAGE PARTS

1. It is agreed that this policy covers loss or damage to the insured property as a result of **Flood**.

2. For the purpose of this insurance, **Flood** shall be defined as follows:

   a) Flood, surface water, rising waters, waves, tides, tidal waves, storm surge, overflow of any body of water or their spray, all whether driven by wind or not;

   b) Mudslide or mudflow;

   c) Water that backs up or overflows from any sewer or drain;

   d) Water that seeps, leaks or flows from below the surface of the ground;

   e) The rising, overflowing or breaking of boundaries of natural or man-made bodies of water;

   f) The release of water held by a dam, levee or dike or by a water or flood control device;

   g) The release of water caused by the Acts, Errors or Omissions by you or others in the design, specifications, workmanship, repair, construction, or renovation of all or any part of a water or flood control device, levee, dam or dike; or

   h) Inundation of normally dry land by natural or man-made causes.

   However, **Flood** does not include the accidental discharge or leakage of water as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance.

3. Limits of Liability:

   The liability of the Company for loss or damage caused by **Flood** shall not exceed the sum of $2,500,000* for loss or damage at any one insured location; however, the limit of liability shown above shall not exceed the sum of $2,500,000 due to any one **Flood** occurrence for all locations combined nor for all **Flood** losses occurring in any one year period or policy period, whichever is less, commencing 9/29/2019.

4. Deductible:

   Please refer to the Deductible & Period of Restoration Endorsement - RSG 94068 *(edition date of form RSG 94068 purposefully omitted in this reference)*.

5. Each loss by **Flood** shall constitute a single claim hereunder; provided, that if more than one **Flood** shall occur within any period of seventy-two (72) hours during the term of this endorsement, such flooding shall be considered to constitute a single **Flood**, but the Company shall not be liable for any loss or damage:

   A. occurring before this policy becomes effective; or

   B. occurring after termination of this policy, except loss or damage arising from an occurrence in progress when this policy is terminated.

6. If the coverage of the policy to which this endorsement is attached includes both Property Damage and Business Interruption, the foregoing limits shall be the maximum amounts collectible under this policy for loss or damage resulting from the peril described in Paragraph 2 above, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption.

All other terms, conditions and warranties remaining unchanged.

*however, not to exceed the limits on any one item as shown elsewhere in this policy

**Policy No.:** NHD909990     **Effective:** 9/29/2019

RSG 94008 0614

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# JOINT LOSS CLAUSE

It is agreed that the policy to which this endorsement is attached is hereby amended as follows:

In the event the Insured suffers a loss of or damage to property at a location designated in this policy and also designated in a Boiler insurance policy, and there is a disagreement between this company and the Boiler insurer with respect to:

(1)  whether the loss or damage was caused by an accident insured against by this policy or by a peril insured against by such Boiler insurance policy, or

(2)  the extent of participation of this policy and of such Boiler insurance policy in the loss or damage;

then, after agreement among the Insured, this company and the Boiler insurer as to the total amount of the loss or damage recoverable under both policies, this company will, upon written request of the Insured, pay to the Insured, in addition to that portion of the total recoverable loss or damage for which it admits liability:

> one-half (1/2) of that portion of the total recoverable loss or damage which is in disagreement (but in no event more than the minimum amount remaining payable under either this policy or the Boiler insurance policy after making provision for undisputed payments)

provided that the Boiler insurer shall simultaneously pay to the Insured the remaining one-half (1/2) of that portion of the total recoverable loss or damage which is in disagreement.

Such payment by this company and the acceptance of the same by the Insured signifies the agreement of the company to submit to and proceed with arbitration within 90 days of such payment in order to apportion the amount of total recoverable loss or damage which is in disagreement between this company and the Boiler insurer. The arbitrators shall be three in number, one of whom shall be appointed by this company, and the third appointed by consent of the other two. The decision by the arbitrators shall be binding on the parties.

The Insured agrees to cooperate in furnishing information and technical data as may be required by this company in connection with such arbitration or any other method of apportionment upon which this company and the Boiler insurer may decide, but not to intervene therein.

Except as otherwise expressly provided herein, this endorsement does not modify or waive any of the terms and conditions of this policy or affect in any way the rights of the Insured or the company hereunder.

This endorsement shall not apply unless the Boiler insurance policy is similarly endorsed, and it may be cancelled by the company on 30 days' written notice to the Insured.

**Policy No.:  NHD909990      Effective:  9/29/2019**

This agreement shall become effective on <u>9/29/2019</u> and shall continue in force until cancelled.

 

 

The Glynn Hospitality Group, Inc.
_____
(Insured)

By: _____
(Signature and Title)

 

_____
(Boiler Insurer)

Boiler Policy #         By: _____
(Signature and Title)

 

RSUI Indemnity Company
_____
(Fire Insurer)

Fire Policy #   NHD909990    By: _____, Executive Vice President - Property Manager
(Signature and Title)

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# MINIMUM EARNED PREMIUM CLAUSE - PERCENTAGE

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

In the event of cancellation of this policy or reduction of coverage by the Insured, a minimum premium of <u>25</u>% of the original policy premium shall become earned; any conditions of the policy to the contrary notwithstanding.

Failure of the Insured to make timely payment of premium shall be considered a request by the Insured for the Company to cancel. In the event of such cancellation by the Company for non-payment of premium, the minimum premium shall be due and payable; provided, however, such non-payment cancellation shall be rescinded if the Insured remits the full premium due within 10 days of receiving it.

In the event of any other cancellation by the Company, the earned premium shall be computed pro rata, not subject to the minimum premium.

**Policy No.:  NHD909990      Effective:  9/29/2019**

RSG 94027 0206

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

**SCHEDULE\***

| Prem. No. | Bldg. No. | Protective Safeguard(s) | Applicable Cause(s) of Loss** |
|---|---|---|---|
| All | All | P-2 | (1) |

**Describe any "P-9":**

**\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.**

**\*\* For each Protective Safeguard listed in this Schedule, enter the number(s) corresponding to the Applicable Cause(s) of Loss to which that Protective Safeguard applies.**

**Applicable Cause(s) of Loss:**

**(1)** Fire

**(2)** Theft or attempted theft, including any loss or damage which results from theft or attempted theft

**(3)** Vandalism

**(4)** Water Damage

**(5)** Sprinkler Leakage

**(6)** Named Storm

**(7)** Windstorm

**(8)** Other (Specify Above)

**A.   PROTECTIVE SAFEGUARDS**

   **1.**   As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

   **2.**   The protective safeguards to which this endorsement applies are identified by the following symbols:

      **"P-1"**   **Automatic Sprinkler System,** including related supervisory services.

      **"P-2"**   **Automatic Sprinkler System connected to a Central Station**

      Automatic Sprinkler System means:

         **a.**   Any automatic fire protective or extinguishing system, including connected:

            **(1)**   Sprinklers and discharge nozzles;

**Policy No.:** NHD909990        **Effective:** 9/29/2019

**(2)** Ducts, pipes, valves and fittings;

**(3)** Tanks, their component parts and supports; and

**(4)** Pumps and private fire protection mains.

**b.** When supplied from an automatic fire protective system:

**(1)** Non-automatic fire protective systems; and

**(2)** Hydrants, standpipes and outlets.

**"P-3"**   **Automatic Extinguishing System,** covering all cooking surfaces and frying equipment.

**"P-4"**   **Automatic Fire Alarm,** protecting the entire building, that is:

**a.** Connected to a central station; or

**b.** Reporting to a public or private fire alarm station.

**"P-5"**   **Automatic Burglary Alarm,** protecting the entire building, that signals to:

**a.** An outside central station; or

**b.** A police station.

**"P-6"**   **Automatic Burglary Alarm,** protecting the entire building, that has a loud sounding gong or siren on the outside of the building.

**"P-7"**   **Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-8"**   **Service Contract,** with a privately owned fire department providing fire protection service to the described premises.

**"P-9"**   The protective system described in the Schedule.

**B.** The following EXCLUSION is added:

We will not pay for loss or damage caused by or resulting from the Applicable Cause(s) of Loss specified in the Schedule, if prior to the loss, you:

a) Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

b) Failed to maintain any protection safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

However, if both A. and B. below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:

A.  The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and

B.  The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any persons, organizations, or property of any nature.

**Policy No.: NHD909990      Effective:  9/29/2019**

RSG 96014 0504

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# FLOOD EXCLUSION – SPECIFIED LOCATIONS AND/OR PROPERTY

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

We will not pay for loss or damage caused directly or indirectly by Flood at any location or for any property indicated below, or at any location within the flood zone(s) selected below as delineated by the Flood Insurance Rate Map for the community in which the location is situated.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

☒ Zones beginning with A

☒ Zones beginning with V

☐ Zone B, Shaded Zone X, and  Zone X500

☐ Zone X

☐ Other (Specify Location(s) and/or Property) _____

The Flood Insurance Rate Map is published by the National Flood Insurance Program and is available from the Federal Emergency Management Agency.

**Policy No.:  NHD909990      Effective:  9/29/2019**

RSG 96020 0615

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CYBER, ELECTRONIC DATA AND SYSTEMS EXCLUSION

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

Notwithstanding any provision to the contrary within the Policy or any endorsements attached thereto, it is understood and agreed as follows:

<u>Exclusion</u>

This Policy does not insure any loss, damage, destruction, distortion, erasure, corruption or alteration of **ELECTRONIC DATA** from any cause whatsoever (including but not limited to **COMPUTER VIRUS**) or any loss of access, any loss of use, reduction in functionality, cost, expense of any kind or of any nature whatsoever resulting therefrom.  Further, this Policy does not insure any loss or damage that directly or indirectly results from loss, damage, destruction, distortion, erasure, corruption or alteration of **ELECTRONIC DATA** from any cause whatsoever (including but not limited to **COMPUTER VIRUS**).

Such loss or damage as described herein is excluded regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage.

This exclusion applies regardless of whether the loss or damage arises out of or results from authorized, unauthorized, intentional, unintentional or accidental access in, of, or to any computer, communication system, file server, network(s), networking equipment, computer system, computer hardware, computer software, data processing equipment, computer memory, microchip, microprocessor, integrated circuit or similar device.

**ELECTRONIC DATA** means facts, concepts and information recorded, transmitted or converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment.  **ELECTRONIC DATA** also includes programs, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

**COMPUTER VIRUS** means a set of corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to any set of maliciously, intentionally, unintentionally or accidentally introduced instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature located anywhere in the world.  **COMPUTER VIRUS** includes, but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

However, in the event that a peril insured by this Policy results from any of the matters described herein, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage to insured property that was directly caused by such peril insured by this Policy and occurring within the Policy Period.

**Policy No.:** NHD909990        **Effective:** 9/29/2019

RSG 96066 0518

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION – MARIJUANA

This endorsement modifies insurance provided under the following:

**ALL COVERAGE PARTS**

**A.** The following Exclusion is added:

    **1.** We will not pay for loss or damage to "marijuana" or any property related to the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana".

    **2.** We will not pay for that part of Business Income loss or Extra Expense incurred due to a "suspension" of your "operations" which involve the design, manufacture, distribution, sale, serving, furnishing, use or possession of "marijuana".

**B.** Paragraph **A.** above does not apply to any "marijuana" that is not designed, manufactured, distributed, sold, served or furnished for bodily ingestion, inhalation, absorption or consumption.

**C.** The following definition is added to the **Definitions** section:

"Marijuana" means:

Any good or product that consists of or contains any amount of Tetrahydrocannabinol (THC) or any other cannabinoid, regardless of whether any such THC or cannabinoid is natural or synthetic.

Which includes, but is not limited to, any of the following containing such THC or cannabinoid:

    **1.** Any plant of the genus Cannabis L., or any part thereof, such as seeds, stems, flowers, stalks and roots; or

    **2.** Any compound, byproduct, extract, derivative, mixture or combination, such as, but not limited to:

        **a.** Resin, oil or wax;

        **b.** Hash or hemp; or

        **c.** Infused liquid or edible marijuana;

    whether derived from any plant or part of any plant set forth in Paragraph **C.1.** above or not.

**Policy No.:  NHD909990      Effective:  9/29/2019**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# INGRESS/EGRESS COVERAGE

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

When a Covered Cause of Loss prevents ingress to or egress from the described premises, regardless of whether the premises or property of the insured has sustained damage, we will pay for the actual loss of Business Income you sustain caused by the ingress to or egress from the described premises.

The described premises are premises to which this endorsement applies, as shown in the Declarations.  This Coverage is subject to a seventy two (72) hour waiting period.

The most we will pay under this endorsement is $ refer to RSG 94053 0506 for all loss sustained in any one occurrence.  The coverage provided under this endorsement does not increase the applicable Limit of Insurance.

**Policy No.:  NHD909990      Effective:  9/29/2019**

RSG 94143 0716

**COMMERCIAL PROPERTY**
**CP 00 10 10 12**

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

      **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 © Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)  Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $  90,000 |
| Amount of Deductible: | $       500 |
| Amount of Loss: | $  50,000 |
| Amount of Loss Payable: | $  49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $  10,000 |
| Debris Removal Expense Payable: | $  10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $  90,000 |
| Amount of Deductible: | $       500 |
| Amount of Loss: | $  80,000 |
| Amount of Loss Payable: | $  79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $  40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $  10,500 |
| Additional Amount: | $  25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b.  Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

    (a) The trailer is used in your business;

    (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

    (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

    (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

    (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

(2) If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

(3) Coverage under this Extension:

    (a) Will end 90 days after the business personal property has been placed in the storage unit;

    (b) Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

(4) Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

(5) This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

### D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

#### Example 1

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---|---|
| $ | 60,100 |
| – | 250 |
| $ | 59,850 Loss Payable – Building 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

#### Example 2

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

### E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:    The value of the property is:

| | |
|---|---|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $250,000 |

The Coinsurance percentage for it is:                                    90%

| | |
|---|---|
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| The Deductible is: | $ 1,000 |

The amount of loss is:

| | |
|---|---|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1)**: $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2)**: $180,000 ÷ $225,000 = .80

Step **(3)**: $50,000 x .80 = $40,000

Step **(4)**: $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011
**CP 00 10 10 12**

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

    **(2)** 30 days expire after you acquire or begin to construct the property; or

    **(3)** You report values to us.

    We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

    **(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

    Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

    **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

    **(7)** Cooperate with us in the investigation or settlement of the claim.

    **(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or damage occurred;

**(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

**(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight – outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:    $ 400,000

        The Coinsurance percentage is:    50%

        The Limit of Insurance is:    $ 150,000

        The amount of loss is:    $ 80,000

Step **(1):** $400,000 x 50% = $200,000

    (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:    $ 400,000

        The Coinsurance percentage is:    50%

        The Limit of Insurance is:    $ 200,000

        The amount of loss is:    $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

    If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

    **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

    **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

    **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      **(1)** The Limit of Insurance, multiplied by

      **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | | |
|---|---|---|
| The Limit of Insurance is: | | $ 120,000 |
| The fraction shown in the Declarations for this Optional Coverage is: | | 1/4 |
| The most we will pay for loss in each period of 30 consecutive days is: | | $ 30,000 |
| ($120,000 x 1/4 = $30,000) | | |
| If, in this example, the actual amount of loss is: | | |
| Days 1–30: | | $ 40,000 |
| Days 31–60: | | $ 20,000 |
| Days 61–90: | | $ 30,000 |
| | | $ 90,000 |
| We will pay: | | |
| Days 1–30: | | $ 30,000 |
| Days 31–60: | | $ 20,000 |
| Days 61–90: | | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

    **a.** To activate this Optional Coverage:

      **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

        **(a)** During the 12 months prior to the date of the Work Sheet; and

        **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

      **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

        **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

        **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

    **b.** The Additional Condition, Coinsurance, is suspended until:

      **(1)** 12 months after the effective date of this Optional Coverage; or

      **(2)** The expiration date of this policy;

    whichever occurs first.

    **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

      **(1)** Within 12 months of the effective date of this Optional Coverage; or

      **(2)** When you request a change in your Business Income Limit of Insurance.

    **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

      **(1)** The Business Income Limit of Insurance; divided by

      **(2)** The Agreed Value.

**Example**

| When: | | |
|---|---|---|
| The Limit of Insurance is: | | $ 100,000 |
| The Agreed Value is: | | $ 200,000 |
| The amount of loss is: | | $ 80,000 |

**Step (1):** $100,000 ÷ $200,000 = .50

**Step (2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

    Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

 © Insurance Services Office, Inc., 2011

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

     Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987     **CP 00 90 07 88**   ☐

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MASSACHUSETTS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** If loss or damage is caused by fire or lightning, the **Vacancy** Loss Condition is replaced by the following:

**VACANCY OR UNOCCUPANCY**

If the building where loss or damage occurs, whether intended for occupancy by owner or tenant, has been vacant or unoccupied for more than:

**1.** 60 consecutive days for residential premises of 3 units or less; or

**2.** 30 consecutive days for all other premises;

immediately before that loss or damage, we will not pay for the loss or damage.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

**C.** The **Mortgageholders** Additional Condition is replaced by the following:

We will pay for covered loss of or damage to real estate to each mortgageholder shown in the Declarations, or in an attached schedule, in the order of precedence, as interests may appear.

**D.** Paragraph **3.d.** of the **Replacement Cost** Optional Coverage is replaced by the following:

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced:

**(a)** On the described premises; or

**(b)** At some other location in the Commonwealth of Massachusetts; and

**(2)** Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage.

With respect to tenants' improvements and betterments, if covered, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of the applicable Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**E.** The following provisions are added:

**1.** In spite of any provision of any general or special law:

**a.** We will not pay for loss or damage to real property caused by any Covered Cause of Loss if the amount of loss is $5,000 or more unless you first submit to us a certificate of municipal liens from the collector of taxes of the city or town where the property is located.

**b.** We will pay to the city or town any amount outstanding on the certificate of municipal liens arising from the provisions of Massachusetts General Law Chapters 40, 59, 60, 80, 83 and 164, Sections 58B through 58F.

The payment will not exceed the amount of loss payable under this Coverage Part.

We will send you and the mortgageholder proof of our payment to the city or town.

**c.** The claim of the city or town will have priority over the claim of any mortgageholder, assignee, you or any other interested party, except where otherwise provided by the laws of the United States.

          Copyright, Insurance Services Office, Inc.,  1999                   ☐

**d.** We will not be liable to any city, town, mortgageholder, assignee, you or any other interested party for:

    **(1)** Amounts paid to a city or town; or

    **(2)** Amounts not paid to a city or town based upon a certificate showing that no municipal liens exist.

**e.** Paragraphs **1.a.**, **1.b.**, **1.c.**, and **1.d.** above will not apply to any owner-occupied one- to four-family dwelling if the owner of the dwelling lived there when the claim for loss or damage arose.

**2.** We will not pay any claim for:

**a.** Loss, damage or destruction of $1,000 or more to a building or structure; or

**b.** Loss, damage or destruction, of any amount, that causes a building or structure to become:

    **(1)** Dangerous to life or limb; or

    **(2)** Unused, uninhabited or abandoned and open to the weather;

as provided under Massachusetts General Law, Section 6 of Chapter 143;

without giving at least 10 days' written notice before such payment to:

**c.** The Building Commissioner or the appointed Inspector of Buildings; and

**d.** The Board of Health or the Board of Selectmen of the city or town where the property is located.

**3.** If at any time before our payment, the city or town notifies us by certified mail of its intent to begin proceedings designed to perfect a lien under Massachusetts General Law:

**a.** Chapter 143, Section 3A or 9; or

**b.** Chapter 111, Section 127B;

we will not pay while the proceedings are pending. The proceedings must be started within 30 days after we receive the notice.

Any lien perfected under the Massachusetts General Laws referred to in **3.a.** and **3.b.** above will extend to the city or town and may be enforced by it against the proceeds of this policy.

**4.** We will not be liable to any city, town, mortgageholder, assignee, you or any other interested party for:

**a.** Amounts paid to a city or town; or

**b.** Amounts not paid to a city or town;

under Provisions **2.** and **3.** above.

**F.** The following condition is added and supersedes any provisions to the contrary:

**NONRENEWAL**

This provision applies to coverage on real property which is used predominantly for residential purposes and consists of not more than four dwelling units, and to coverage on personal property of a person residing in such real property:

**1.** Ordinarily we will renew this policy automatically and send you the renewal notice. Our notice will explain what you should do if you do not want to continue this policy.

**2.** We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your last mailing address shown in the Declarations, written notice of nonrenewal, accompanied by the specific reasons for nonrenewal, at least 45 days before the expiration date of this policy. However, if your policy was executed on behalf of us, in whole or in part, by or on behalf of your insurance agent or our insurance broker, we will send such written notice only to the agent or broker. Every insurance agent or broker receiving this notice is required to, within 15 days of its receipt, send a copy to you unless the agent or broker has replaced the insurance.

Copyright, Insurance Services Office, Inc., 1999

**G.** The following is added:

## STANDARD FIRE POLICY PROVISIONS

Your policy contains Legal Action Against Us, Appraisal and Cancellation Provisions. Massachusetts law requires that the Suit, Appraisal and Cancellation Provisions of the Massachusetts Standard Fire Policy supersede any similar provisions contained in your policy. Therefore, all Legal Action Against Us, Appraisal and Cancellation Provisions contained in your policy are void. The Suit, Appraisal and Cancellation Provisions of the Massachusetts Standard Fire Policy shall apply instead.

In consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations, this company, for the term of years specified in the Declarations from inception date (At 12:01 A.M. Standard Time) to expiration date (At 12:01 A.M. Standard Time) at location of property involved, to an amount not exceeding the amount(s) specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but in no event for more than the interest of the insured, against all Loss By Fire, Lightning And By Removal From Premises Endangered By The Perils Insured Against In This Policy, Except As Hereinafter Provided, to the property described in the Declarations while located or contained as described in this policy or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

| | |
|---|---|
| **Concealment Fraud** | This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto. |
| **Uninsurable And Excepted Property** | This policy shall not cover accounts, bills, currency, deeds, evidences of debt, money or securities; nor, unless specifically named hereon in writing, bullion or manuscripts. |
| **Perils Not Included** | This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by **(a)** enemy attack by armed forces, including action taken by military, naval or air forces in resisting an actual or an immediately impending enemy attack; **(b)** invasion; **(c)** insurrection; **(d)** rebellion; **(e)** revolution; **(f)** civil war; **(g)** usurped power; **(h)** order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy; **(i)** neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises; **(j)** nor shall this company be liable for loss by theft. |
| **Other Insurance** | Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto. |

**Conditions Suspending Or Restricting Insurance**

Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring **(a)** while the hazard is increased by any means within the control or knowledge of the insured; or **(b)** while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or **(c)** as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

**Other Perils Or Subjects**

Any other peril to be insured against or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added hereto.

**Added Provisions**

The extent of the application of insurance under this policy and of the contribution to be made by this company in case of loss, and any other provision or agreement not inconsistent with the provisions of this policy, may be provided for in writing added hereto, but no provision may be waived except such as by the terms of this policy is subject to change.

**Waiver Provisions**

No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.

**Cancellation Of Policy**

This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be cancelled at any time by this company by giving to the insured a five days written notice of cancellation, and to the mortgagee to whom this policy is payable twenty days written notice of cancellation except where the stated reason for cancellation is nonpayment of premium where, in such instance, this policy may be cancelled at any time by this company by giving to the insured a ten days written notice of cancellation, and the mortgagee a twenty days written notice of cancellation, with or without tender of the excess paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand and shall state or be accompanied by a statement of the specific reason or reasons for such cancellation. After this policy has been in effect for sixty days, or after sixty days from any anniversary date, no notice of cancellation shall be effective unless it is based on the occurrence, after the effective date of the policy, of one or more of the following: **(1)** nonpayment of premium; **(2)** conviction of a crime arising out of acts increasing the hazard insured against; **(3)** discovery of fraud or material misrepresentation by the insured in obtaining the policy; **(4)** discovery of willful or reckless acts or omissions by the insured increasing the hazard insured against; **(5)** physical changes in the property insured which result in the property becoming uninsurable; or **(6)** a determination by the commissioner that continuation of the policy would violate or place the insurer in violation of the law. Where the stated reason is nonpayment of premium, the insured may continue the coverage and avoid the effect of the cancellation by payment at any time prior to the effective date of cancellation.

Copyright, Insurance Services Office, Inc., 1999

**Mortgagee Interests And Obligations**   Notwithstanding any other provisions of this policy, if this policy shall be made payable to a mortgagee of the covered real estate, no act or default of any person other than such mortgagee or his agent or those claiming under him, whether the same occurs before or during the term of this policy, shall render this policy void as to such mortgagee nor affect such mortgagee's right to recover in case of loss on such real estate; provided, that the mortgagee shall on demand pay according to the established scale of rate for any increase of risk not paid for by the insured; and whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor, or owner, and this company shall elect by itself, or with others, to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the company interested, upon such payment, the said mortgage together with the note and debt thereby secured.

**Pro Rata Liability**   This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved.

**Requirements In Case Loss Occurs**   The insured shall give immediate written notice to this company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed and damaged property, showing in detail the quantity, description, actual cash value and amount of loss claimed; and the insured shall forthwith render to this company a signed, sworn statement in proof of loss which sets forth to the best knowledge and belief of the insured the following: the time and cause of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupancy, location, possession or exposures of said property, since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and detailed estimates for repair of the damage. The insured, as often as may be reasonably required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made.

**When Loss Payable**

In case of any loss or damage, the company within thirty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, which amount if not agreed upon shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately covered by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition. It is moreover understood that there can be no abandonment of the property described to the company, and that the company shall not in any case be liable for more than the sum insured, with interest thereon from the time when the loss shall become payable, as provided above. The company shall be liable for the payment of interest to the insured at a rate of one percent over the prime interest rate on the agreed figure commencing thirty days after the date an executed proof of loss for such figure is received by the company, said interest to continue so long as the claim remains unpaid.

**Appraisal**

In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutally agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of three persons to be named by the other, and the third being selected by the two so chosen, and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss; but no person shall be chosen or act as a referee, against the objection of either party, who has acted in a like capacity within four months.

**Suit**

No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration after failure of the parties to agree thereon, the limitation of time for bringing such suit or action shall in no event be less than ninety days after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties. If suit or action upon this policy is enjoined or abated, suit or action may be commenced at any time within one year after the dissolution of such injunction, or the abatement of such suit or action, to the same extent as would be possible if there was no limitation of time provided herein for the bringing of such suit or action.

**Subrogation**

This company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this company.

Copyright, Insurance Services Office, Inc.,  1999

POLICY NUMBER: NHD909990

**COMMERCIAL PROPERTY**
**CP 04 17 10 12**

# UTILITY SERVICES – DIRECT DAMAGE

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY
TOBACCO SALES WAREHOUSES COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Utility Services Limit Of Insurance | Enter "X" for each applicable property. | | | | |
|---|---|---|---|---|---|---|---|
| | | | Water Supply Property | Commu-nication Supply Property (including overhead transmis-sion lines) | Commu-nication Supply Property (not including overhead transmis-sion lines) | Power Supply Property (including overhead transmis-sion lines) | Power Supply Property (not including overhead transmis-sion lines) |
| All | All | $  Refer to RSG 94053 0506 | ☒ | ☐ | ☒ | ☐ | ☒ |
| Covered Property:  Building and Personal Property | | | | | | | |
| Causes Of Loss Form Applicable:  Special | | | | | | | |
| | | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Covered Property: | | | | | | | |
| Causes Of Loss Form Applicable: | | | | | | | |
| | | $ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Covered Property: | | | | | | | |
| Causes Of Loss Form Applicable: | | | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | |

**A. Coverage**

We will pay for loss of or damage to Covered Property described in the Schedule, caused by an interruption in utility service to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

**B. Exception**

Coverage under this endorsement for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

**C. Utility Services**

1. Water Supply Services, meaning the following types of property supplying water to the described premises:

   **a.** Pumping stations; and

   **b.** Water mains.

2. Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

   **a.** Communication transmission lines, including optic fiber transmission lines;

   **b.** Coaxial cables; and

   **c.** Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

3. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

   **a.** Utility generating plants;

   **b.** Switching stations;

   **c.** Substations;

   **d.** Transformers; and

   **e.** Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**D.** As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**E.** If a Utility Services Limit Of Insurance is shown in the Schedule, such limit is part of, not in addition to, the Limit Of Insurance stated in the Declarations or in the Separation Of Coverage endorsement as applicable to the Covered Property.

If no Limit of Insurance is shown for Utility Services, coverage under this endorsement is subject to the applicable Limit Of Insurance on the Covered Property as shown in the Declarations or in the Separation Of Coverage endorsement. But this Utility Services endorsement does not increase the applicable Limit of Insurance.

 © Insurance Services Office, Inc., 2011 CP 04 17 10 12

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (a) An ordinance or law that is enforced even if the property has not been damaged; or

   (b) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   (1) Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

   © Insurance Services Office, Inc., 2011   CP 10 30 10 12

### 4. Special Exclusions

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

5. **Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   **(1)** A cause of loss listed in **2.a.** or **2.b.;**

   **(2)** One or more of the "specified causes of loss";

   **(3)** Breakage of building glass;

   **(4)** Weight of people or personal property; or

   **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

  **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

    **(1)** The cost of filling sinkholes; or

    **(2)** Sinking or collapse of land into man-made underground cavities.

  **b.** Falling objects does not include loss or damage to:

    **(1)** Personal property in the open; or

    **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

  **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

  **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

POLICY NUMBER: NHD909990

**COMMERCIAL PROPERTY**
**CP 15 45 10 12**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UTILITY SERVICES – TIME ELEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

**SCHEDULE**

| Premises Number | Building Number | Utility Services Limit Of Insurance | Water Supply Property | Waste-water Removal Property | Commu-nication Supply Property (including overhead transmis-sion lines) | Commu-nication Supply Property (not including overhead transmis-sion lines) | Power Supply Property (including overhead transmis-sion lines) | Power Supply Property (not including overhead transmis-sion lines) |
|---|---|---|---|---|---|---|---|---|
| | | | Enter **"X"** for each applicable property. | | | | | |
| All | All | $ Refer to RSG 94053 0506 | ☒ | ☐ | ☐ | ☒ | ☐ | ☒ |
| **Causes Of Loss Form Applicable:** Special | | | | | | | | |
| | | $ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Causes Of Loss Form Applicable:** | | | | | | | | |
| | | $ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| **Causes Of Loss Form Applicable:** | | | | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | | | | |

## A. Coverage

Your coverage for Business Income and/or Extra Expense, as provided and limited in the applicable Coverage Form, is extended to apply to a "suspension" of "operations" at the described premises caused by an interruption in utility service to that premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss (as provided under the applicable Causes of Loss Form indicated in the Schedule) to the property described in Paragraph **C.** if such property is indicated by an "X" in the Schedule.

## B. Exception

Coverage under this endorsement does not apply to Business Income loss or Extra Expense related to interruption in utility service which causes loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Coverage Form to which this endorsement applies.

## C. Utility Services

1. Water Supply Property, meaning the following types of property supplying water to the described premises:

   a. Pumping stations; and

   b. Water mains.

2. Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities.

Coverage under this endorsement does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

3. Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

   a. Communication transmission lines, including optic fiber transmission lines;

   b. Coaxial cables; and

   c. Microwave radio relays except satellites.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

4. Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

   a. Utility generating plants;

   b. Switching stations;

   c. Substations;

   d. Transformers; and

   e. Transmission lines.

   It does not include overhead transmission lines unless indicated by an "X" in the Schedule.

**D.** As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**E.** The **Coinsurance** Additional Condition does not apply to this endorsement.

**F.** The Utility Services Limit Of Insurance, as shown in the Schedule, is the only Limit which applies to the coverage provided under this endorsement, and is part of, not in addition to, the Limit Of Insurance stated in the Declarations as applicable to the described premises.

Your policy has been signed on our behalf by our President and by our Secretary.  However, your policy will not be binding on us unless it is also countersigned by one of our duly authorized agents.

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

*A member of Alleghany Insurance Holdings LLC*

RSG 94001 0916

Exhibit B

**RSUI Group, Inc.**
Suite 1800
945 East Paces Ferry Road
Atlanta, GA  30326-1125

Phone:     404-260-3694
Fax:
Email:     ddurbin@rsui.com

August 24, 2020

SWEENEY MERRIGAN LAW, LLP
ATTN: MAURICIO VACA
Email: mauricio@sweeneymerrigan.com

RE:     Insured: GLYNN HOSPITALITY GROUP INC.
        Insurer: RSUI INDEMNITY COMPANY
        Policy Number: NHD909990
        Location of Loss: VARIOUS LOCATINS / BOSTON, MA
        Nature of Loss: COVID-19 Loss of Income
        Date of Loss: 3/13/20
        Claim Number: 7030148588

Dear Mr. Vaca:

RSUI INDEMNITY COMPANY ("RSUI") acknowledges receipt of your claim regarding the above subject loss.  According to the information furnished to us, it is being reported that the insured locations have either had a reduction in operations or has had to close entirely due to concerns associated with the COVID-19 virus.

The undersigned spoke with you regarding your claim on 8/3/20 and you confirmed that your client's premises were shut down due to the COVID-19 virus.  You advised the undersigned that the insured is making a Business Income claim as a result of local orders to close various business locations.  I asked you if the insured sustained direct physical damage at any covered premises or if the insured was making a claim for civil authority.  You would not answer my question directly whether any direct physical damage occurred or whether a covered cause of loss occurred.  We discussed ingress/egress coverage with you and I advised that this coverage requires a covered cause of loss.  You argued that in the state of MA, direct physical damage is not required to trigger Business Income coverage based on case law.  I advised you that regardless of the requirement for direct physical damage in our policy the loss must be caused by a covered cause of loss.  I then advised that the pathogen exclusion does apply and therefore no covered cause of loss occurred for Business Income, Civil authority or egress/ingress coverage.  You then disagreed that the COVID-19 virus is not a pathogen and a virus is not a physical material.  I advised you that a virus is included as a pathogen.

Based on reviewing your policy, I would like to bring specific policy language to your attention.  The following excerpts from the **Business Income (And Extra Expense) Coverage Form CP 00 30 10 12** have been provided for your convenience.

    **"A. Coverage**
       **1. Business Income**
         Business Income means the:
         **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
         **b.** Continuing normal operating expenses incurred, including payroll.
         For manufacturing risks, Net Income includes the net sales value of production.

RSUI Indemnity Company
Landmark American Insurance Company
Covington Specialty Insurance Company

*A member of Alleghany Insurance Holdings LLC*

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".
**(2)** Business Income Other Than "Rental Value".
**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

**5. Additional Coverages**
**a. Civil Authority**
In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Also, the following excerpts from the **Ingress/Egress Coverage endorsement RSG 94143 0716** have been provided for your convenience.

"This Endorsement Changes The Policy.  Please Read It Carefully.
**INGRESS/EGRESS COVERAGE**

 A member of Alleghany Insurance Holdings LLC

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

*When a Covered Cause of Loss prevents ingress to or egress from the described premises*, regardless of whether the premises or property of the insured has sustained damage, we will pay for the actual loss of Business Income you sustain caused by the ingress to or egress from the described premises.

The described premises are premises to which this endorsement applies, as shown in the Declarations.   This Coverage is subject to a seventy two (72) hour waiting period.

The most we will pay under this endorsement is $ refer to RSG 94053 0506 for all loss sustained in any one occurrence.  The coverage provided under this endorsement does not increase the applicable Limit of Insurance."

The following is found in the **CAUSES OF LOSS – SPECIAL FORM (CP 10 30 10 12)** in your policy:

**B. Exclusions**

> **2.** We will not pay for loss or damage caused by or resulting from any of the following:

**c.** Delay, loss of use or loss of market.

Additionally, the following endorsement titled **EXCLUSION OF PATHOGENIC OR POISONOUS BIOLOGICAL OR CHEMICAL MATERIALS** Endorsement **RSG 96014 0504** relates to the claimed loss as well.

"This endorsement modifies insurance provided under the following:
**ALL COVERAGE PARTS**

The following exclusion is added:
We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
However, if both A. and B. below apply, we will pay up to a maximum of $10,000 for any and all claims for such loss or damage arising out of events occurring within the term of this policy:
> **2.** The pathogenic or poisonous biological or chemical materials are normally kept at or brought onto your premises, with your consent, for use in your business operations at your premises; and
> **3.** The discharge, dispersal, seepage, migration, release, escape or application of the pathogenic or poisonous biological or chemical materials is accidental and is not the result of a willful or malicious act against any
> persons, organizations, or property of any nature."

We have reviewed the Covid-19 related Executive Orders issued by Governor Charlie Baker of Massachusetts. Based upon this review, it seems clear that the goal of the various Orders issued by

 A member of Alleghany Insurance Holdings LLC

governmental officials was because of concerns for the public's health and were focused on attempts to curtail the threatening spread of the COVID-19 virus, not due to physical damage to property. We were unable to find any order that was issued which was the result of any particular physical loss or damage either at the insured's premises or within one mile of the insured's premise. In addition to this, RSUI is unaware of any direct physical loss of or damage, from a covered cause of loss that would implicate coverage in this matter.

Please note that the policy with RSUI requires that *the suspension* (of your operations) *must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.* Additionally, if the closure was due to the action of local, State or Federal authorities, the coverage for Civil Authority requires that *the action is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.* The RSUI policy does not cover loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic. Given that Glynn Hospitality Group's claimed loss or damage is due to the virus known as the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), the pathogen that causes the COVID-19 disease, coverage under the RSUI policy is precluded by the "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" Endorsement. All loss or damage caused directly or indirectly by the virus is excluded under the RSUI Policy and no payment will be forthcoming..

RSUI reserves all rights and defenses it may have in this matter. The actions of RSUI shall not constitute a waiver or an estoppel of any of the rights or defenses that it may have with respect to the claim. RSUI does not waive the Policy's two-year (2-year) suit/legal action requirement or any other applicable time limit for a legal action to be brought against RSUI. Further, references to specific terms, conditions, exclusions, or any other provision of the RSUI Policy (as provided above) do not prevent RSUI from relying on any provisions within the RSUI Policy or from asserting any defense to coverage available under the applicable law(s).

If you have any additional information, which may impact our consideration or the decision expressed herein, we request that you forward it to our office. Otherwise, as subject loss is not covered by the policy, we are closing our file at this time.

Sincerely,

*Dan Durbin*

**Chief Claims Specialist**
**RSUI Group, Inc.**
**945 East Paces Ferry Road**
**Suite 1800**
**Atlanta, GA 30326**
ddurbin@rsui.com
**404-260-3694**

CC: callison@rtspecialty.com

 A member of Alleghany Insurance Holdings LLC